Candace **BOLLARD**, Randy **Bollard**, and Carrie Hewitt, Relators,

v.

The Honorable David **BERCHELMANN**, Jr., Respondent.

No. 04–96–00172–CV.

Court of Appeals of Texas, San Antonio.

April 24, 1996.

Edward P. Cano, Victor Hugo Negron, Jr., Law Offices of Edward P. Cano, San Antonio, for Appellant.

Mark L. Medley, Law Office of Mark L. Medley, P.C., Karl E. Hays, San Antonio, for Appellee.

Before LÓPEZ, STONE and GREEN, JJ.

## OPINION ON RELATORS' PETITION FOR WRIT OF MANDAMUS

LÓPEZ, Justice

This petition for writ of mandamus arises from a suit to modify child custody initiated by Margaret Cobb, the real party in interest. The relators, Candace Bollard, Randy Bollard, and Carrie Hewitt, complain that the trial court abused its discretion in failing to

grant their motion to transfer venue. We deny relief to the Bollards but conditionally grant the writ on Hewitt's petition.

## Summary of Facts

In 1992, the 150th District Court of Bexar County named Carrie Hewitt a possessory conservator of her daughter, Ashley Hewitt. Carrie's parents, Candace and Randy Bollard, were named joint managing conservators. Ashley's father, William Hewitt, was not given conservatorship. However, his mother, Margaret Cobb, was named a possessory conservator. The decree specified the general rights and duties of the possessory conservators but did not provide standard possession orders. Instead, the decree detailed Cobb's periods of visitation and ordered that Hewitt have possession "at such times as may be mutually agreed by her and the Joint Managing Conservators."

Sometime after the decree was entered, the Bollards moved Ashley from San Antonio, Texas to Leonard, Texas. Hewitt moved to Dallas, Texas. Cobb continued to live in Von Ormy, Texas, about 300 miles from Hewitt and the Bollards. In December 1994, Cobb filed a motion to enforce visitation and a motion to modify. In the latter motion, Cobb sought to be named as Ashley's sole managing conservator. The Bollards responded to Cobb's motions with a general denial and cross-motion to modify. Hewitt was never served with process.

In August 1995, Hewitt joined her parents in filing an amended motion to modify, in which they requested that Hewitt be named as a joint managing conservator or, alternatively, as a possessory conservator with the same visitation rights as Cobb. Hewitt appears as an additional petitioner in the style and body of the pleading. She did not intervene in the suit or otherwise file a formal notice of appearance.

On the same day Hewitt and the Bollards filed the amended motion to modify, they filed a joint motion to transfer venue from Bexar County to Fannin County. They alleged, by verification signed by Candace Bollard, that Ashley had lived in Fannin County for more than six months. Cobb filed a written, unverified response challenging the timeliness of the motion but not challenging the residency allegation.

The Honorable Carol Haberman denied the motion to transfer, and the Honorable David Berchelmann denied the motion to reconsider. The judges sat in the 150th district court pursuant to Bexar County's presiding court system. *See* LOCAL RULES OF THE CIVIL DISTRICT COURTS OF BEXAR COUNTY. In this original proceeding, Hewitt and her parents complain only of the order denying the motion to reconsider.

## Standard of Review

Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or acted in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). When we review factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40. However, our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.*

## 1. Mandatory Duty and Remedy by Appeal

Transferring a case to a county where the child has resided for more than six months is a mandatory ministerial duty under TEX.FAM.CODE ANN. § 155.201 (Vernon Supp.1996). *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987) (referring to the original enactment in section 11.06). Remedy by appeal, although available, is frequently inadequate to protect the rights of parents and children to a trial in a particular venue. *Id.* While appellate courts will not generally issue writs of mandamus to correct erroneous

venue decisions, they may do so in suits affecting the parent/child relationship. *See id; Scanio v. McFall,* 877 S.W.2d 888, 891 n. 3 (Tex.App.—Amarillo 1994, orig. proceeding).

■ To be entitled to a writ of mandamus, a relator must have a clear legal right to relief. *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979). Cobb contends that Hewitt and her parents have not met this burden because Judge Berchelmann had no mandatory duty to reconsider the actions of Judge Haberman in denying the motion to transfer venue.[1]

In *Velez v. De Lara,* 905 S.W.2d 43, 45 (Tex.App.—San Antonio 1995, no writ), we explained that jurisdiction to reconsider interlocutory rulings is vested in the court rather than the individual judge; thus, Judge Berchelmann had the authority to reconsider Judge Haberman's ruling. That authority was mandatory under section 155.201. *See Proffer,* 734 S.W.2d at 673. While it would have been the better practice for Hewitt and the Bollards to challenge both adverse rulings, they were not required to do so. *Cf. IMC Fertilizer, Inc. v. O'Neill,* 846 S.W.2d 590, 591 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding) (challenging the first ruling but not the second); *Terrell State Hosp. v. Ashworth,* 794 S.W.2d 937, 939 (Tex. App.—Dallas 1990, orig. proceeding [leave denied]) (challenging the second ruling when the trial court reversed itself).

## 2. Abuse of Discretion

A motion to modify a suit affecting the parent/child relationship must be filed in the court of continuing, exclusive jurisdiction; but, upon *"timely* motion of a party the court shall transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer." TEX.FAM.CODE ANN. § 155.201 (Vernon Supp. 1996) (emphasis added). The timeliness of a motion depends upon whether the movant is a petitioner or "other party":

A motion to transfer by a *petitioner or movant*[2] is timely if it is made at the time the initial pleadings are filed. A motion to transfer by *another party* is timely if it is made on or before the first Monday after the 20th day after the date of service of citation or notice of the suit or before the commencement of the hearing, whichever is sooner. If a timely motion to transfer has been filed and no controverting affidavit is filed within the period allowed for its filing, the proceeding shall be transferred promptly without a hearing to the proper court.

*Id.* § 155.204(a) (emphasis added).

■ Hewitt and the Bollards maintain that transfer was mandatory because the motion to transfer was timely and uncontroverted. Cobb argues that we cannot determine if Judge Berchelmann abused his discretion in denying the transfer because we have no statement of facts from either hearing in the trial court. A statement of facts is not required when, as here, no evidence was received at the hearing. *Walker,* 827 S.W.2d at 833 n. 3; TEX.R.APP.P. 121(a)(2). In addition, because Cobb failed to file a controverting affidavit, she was not entitled to a hearing. *See* TEX.FAM.CODE ANN. § 155.204(a) (Vernon Supp.1996). In the trial court, Cobb's objections to the motion were limited to the form and timeliness of the document, issues which do not require a statement of facts.

### a. Candace and Randy Bollard

■ Cobb contends that Candace and Randy Bollard are not entitled to relief because, as respondents, their motion to transfer venue was filed late. We need not decide whether the Bollards are properly characterized as "petitioners" or "respondents" because, in either case, their motion was untimely.

Cobb filed her motion to modify on December 19, 1994; and, on January 24, 1995, the

---

1. We decline to address Cobb's contentions, raised for the first time at oral argument, that the motion to reconsider and the petition for mandamus were untimely.

2. To read "movant" as the party who files the motion to transfer would render meaningless the reference to "any other party." *Martinez v. Flores,* 820 S.W.2d 937, 939 n. 2 (Tex.App.— Corpus Christi 1991, orig. proceeding).

Bollards responded with a general denial and cross-motion to modify. The Bollards filed their motion to transfer venue on September 1, 1995, almost eight months after their initial pleadings were filed. In such a case, transfer is not mandatory. *Compare* TEX. FAM.CODE ANN. § 155.204(a) (Vernon Supp. 1996) (defining "timeliness" for mandatory transfer) *with id.* § 155.202 (not requiring timeliness for discretionary transfer).

We agree with Cobb that Judge Berchelmann did not abuse his discretion in denying the Bollards' motion to transfer venue.

### b. Carrie Hewitt

Cobb argues that Hewitt is not entitled to relief because her motion to transfer was technically deficient. Specifically, Cobb maintains that Hewitt's motion (1) was inconsistent with other pleadings; and (2) was not properly before the court because Hewitt did not intervene.[3] Cobb concludes that Hewitt is "another party" whose motion was filed more than twenty days after she received constructive notice of the suit.

#### (1) Was Hewitt's Motion Inconsistent with the Pleadings?

Although Cobb did not challenge the child's residency in the trial court, in this court she notes that the motion to transfer alleges residency inconsistent with the other pleadings on file.

The Bollards' answer alleged that Ashley resided with them in Leonard, Keller County, Texas. In their amended motion to modify, in which Hewitt appears as a party, they alleged that Ashley lives in Leonard. In one section of the amended motion, they stated that Leonard is located in Hunt County, but in three other locations they stated that Leonard is located in Fannin County. The verified motion to transfer alleges that Ash-

ley has lived in Fannin County for six months.

The parties consistently asserted that Ashley lived in Leonard. In the motion to transfer, the county of residence is unequivocally identified as Fannin County. Furthermore, we take judicial notice that Leonard is located in Fannin County. *See* 2 THE TEXAS LEGAL DIRECTORY: OFFICIAL DIRECTORY OF THE STATE BAR OF TEXAS 460 (1995) (locating Leonard in Fannin County). We find no fatal inconsistencies.

#### (2) Was Hewitt Properly Before the Trial Court?

Cobb contends that Hewitt cannot join the proceedings by simply naming herself as an additional petitioner. Because Hewitt did not properly intervene, argues Cobb, the trial court did not abuse its discretion in denying her motion to transfer.[4]

Any party who has standing to bring an original suit affecting the parent/child relationship may bring a motion to modify that relationship. TEX.FAM.CODE ANN. § 156.002(b) (Vernon Supp.1996). Furthermore, the rules of civil procedure applicable to the filing of an original lawsuit apply to a suit for modification. *Id.* § 156.004.

As Ashley's biological mother, Hewitt had standing to file a motion to modify. *Id.* §§ 102.003(1), 156.002(b). Although she could have filed an intervention under TEX.R.CIV.P. 60, she could also become a plaintiff or petitioner by adding her name to an amended petition. *See* TEX.R.CIV.P. 37, 40. In this case, Hewitt was not required to intervene because she had no interests adverse to that of her parents; they agreed that Hewitt should be named as one of three joint managing conservators. Even if Hewitt should have intervened, Cobb did not file a

---

3. For the first time at oral argument, Cobb argued that the motion was improperly verified by Candace Bollard, a party not entitled to a mandatory transfer but qualified to testify about the child's residency. The statute does not require verification. TEX.FAM.CODE ANN. §§ 155.201, .204 (Vernon Supp.1996).

4. Cobb contends that Hewitt was not a necessary party entitled to service of process under TEX.FAM. CODE ANN. § 156.003 (Vernon Supp.1996). This

argument is irrelevant to whether Hewitt was properly before the court or properly characterized as a petitioner. Nonetheless, we note that Hewitt was entitled to service because her possessory rights would be affected by a change in managing conservator. In addition, whether Hewitt had constructive notice of the suit is irrelevant to whether she is a petitioner or "other party."

**866**

motion in opposition as required by TEX. R.CIV.P. 60. *Sheerin v. Exxon Corp.,* 923 S.W.2d 52, 55 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.) (designated for publication).

For her contention that Hewitt should have intervened, Cobb refers to *Walker v. Miller,* 729 S.W.2d 120, 121 (Tex.App.—Dallas 1987, orig. proceeding), where the minor's father filed a motion to modify and obtained service against the mother, the managing conservator. The grandparents, who were not served, filed a motion to transfer venue and a petition in intervention asking to be named joint managing conservators. *Id.* at 121–23. The appellate court characterized the intervening grandparents as "petitioners." *Id.* at 123.

In our case, the grandparents did not request relief adverse to the rights of the mother. Characterizing Hewitt as a petitioner is consistent with *Walker*'s liberal construction of the mandatory transfer provision. *See id.* (condemning severe limitations "without good reason"). Thus, Hewitt was properly before the trial court as a petitioner.

 Section 155.204 of the Family Code does not distinguish between petitioners and counter-petitioners. Instead, "[a] motion to transfer by a petitioner or movant is timely if it is made at the time *the initial pleadings are filed.*" TEX.FAM.CODE ANN. § 155.204(a) (Vernon Supp.1996). The italicized portion refers to the first pleading filed by that petitioner. *See Walker,* 729 S.W.2d at 123; *cf. Garza v. Texas Dep't of Human Servs.,* 757 S.W.2d 44, 47–48 (Tex.App.—San Antonio 1988, writ denied) (holding that a respondent cannot avoid the "initial pleading" element by obtaining a dismissal and filing her own suit). Because Hewitt joined the suit as a counter-petitioner, and on the same day filed her motion to transfer, her motion was timely.

*(3) Summary*

We conclude that Judge Berchelmann misapplied the law to the facts and therefore abused his discretion in denying Hewitt's motion to transfer venue.

**Conclusion**

The Bollards' petition for writ of mandamus is denied. Hewitt's petition for writ of mandamus is conditionally granted. We anticipate that, in accordance with our opinion, Judge Berchelmann will withdraw his order of February 21, 1996, and order the underlying cause transferred to Fannin County. If, upon certification to this court that he has not done so within ten days of this opinion, we will issue the writ.